## SAHLER *vs.* SIGNER.

One having only a mortgage interest in premises cannot maintain an action of ejectment.

On the 28th of November, 1848, F. became the purchaser of certain premises, at a mortgage sale.  On the 12th of December, thereafter, he executed and delivered to H., the previous owner of the premises, a paper by which he acknowledged the receipt of certain securities from H., and declared that such securities, and their proceeds, should remain as collateral security for advances which might be made or liabilities incurred by F. on the purchase of certain property of H. then advertised for sale, or which he had already incurred on the purchase of the premises in question; and that whenever such advances were repaid, or such liability extinguished, he (F.) was to account to H. for said securities or their proceeds.  *Held* that this was a written declaration in effect that F. made the purchase for the benefit of H.; that he had advanced the purchase money, or incurred liabilities therefor; and that he held the choses in action as security for the liabilities thus incurred.  And that whether those liabilities had been discharged by H. or still remained, one claiming under F. could not maintain ejectment for the premises.

And F. thus having an interest in the premises, not absolute, but only qualified, by way of mortgage or security, the defendant as devisee of H. entered into the possession, with the consent of F., not as his tenant or to pay rent, but to keep possession, keep the fences in repair, pay the taxes and enjoy the rents and profits, not recognizing an absolute title in F., but only a title in him as mortgagee; *Held* that the defendant was not, by thus going into possession, estopped from controverting the title of F. by showing the real facts of the case.

APPEAL from a judgment at the circuit, entered under the direction and findings of the judge. This was an action of ejectment brought by the plaintiff against the defendant, to recover the possession of certain premises situate in the town of Marbletown, Ulster county. The answer was a general denial. The cause was tried at the Ulster circuit on May 28, 1861, before Justice GOULD, without a jury. The judge found the following facts : " That one Isaac L. Hasbrouck owned and occupied the premises described in the complaint, on and prior to February 18, 1839, and continued to occupy them till his death. That on said February 18, 1839, said Hasbrouck mortgaged the premises, together with others, to one Jonathan Hasbrouck; that said mortgage,

on the 28th day of November, 1848, was foreclosed, and these premises purchased by James C. Forsyth; that after said sale and purchase, and on the 12th day of December, 1848, James C. Forsyth executed to said Isaac L. Hasbrouck a written instrument," by which Forsyth acknowledged the receiving of notes and securities (which are specified) from Isaac L. Hasbrouck, amounting in the aggregate to $6723.99. The proceeds of such securities, or the securities themselves, were to be held by Forsyth as collateral security for any advances or liabilities which he might make or incur, or had made or incurred, in the purchase of Isaac L. Hasbrouck's property at mortgage sale, under a mortgage of J. H. & R. De Witt, or Jonathan Hasbrouck. When Forsyth was repaid his advances, he was to account for the proceeds of such securities to Isaac L. Hasbrouck. "That on the 29th day of August, 1853, the said Forsyth made a general assignment to Robert A. Forsyth for benefit of creditors; that Isaac L. Hasbrouck died August 20, 1852; that he left a will executed June 28, 1828, whereby he devised and bequeathed all his real and personal estate to the plaintiff and the defendant, share and share alike; that the plaintiff claimed to be the half owner of said premises under the said will, and on the 12th day of October, 1853, sold and transferred his interest therein to one Nathaniel Bruce. That in the fall of 1852, after the death of Isaac L. Hasbrouck, James C. Forsyth and the defendant had an interview, in which it was agreed that the defendant should have the possession of the real estate formerly belonging to said Isaac L. Hasbrouck, the legal title of which was in Forsyth, including the premises in this action; said Forsyth proposing to commence proceedings for a strict foreclosure of the interest of the heirs at law and devisees of Isaac L. Hasbrouck therein; the defendant to have the management, use and profits of the premises, and to pay the taxes thereon, and keep the fences, &c. in repair. That the defendant immediately thereafter took possession of said premises under such agreement

with Forsyth, and has ever since continued in possession. That on the 20th day of December, 1859, in pursuance of an order of the surrogate of Ulster county in proceedings taken by the creditors of Isaac L. Hasbrouck, deceased, the real estate in said county formerly belonging to said Isaac L. Hasbrouck, including these premises, were sold at public auction by H. Brodhead, jr., referee, for that purpose duly appointed. That the premises in question in this action were bought at said public sale by Sarah C. Signer, a daughter of the defendant, and a deed was given to her therefor, on the 5th of January, 1860, by the referee in said proceedings under the surrogate's order; that the plaintiff was present at said sale, and bid for and bought other parts of the real estate formerly belonging to said Hasbrouck, the legal title of which was in said Forsyth, and the plaintiff knew that these premises were struck off to, and bought in by, said Sarah C. Signer at the sale. That after the surrogate's sale of these premises and the purchase thereof by Sarah C. Signer, and before the 13th day of January, 1860, the defendant hired these premises of said Sarah C. Signer; that the defendant continued in possession of said premises, under such hiring, till after the commencement of this action. At and shortly subsequent to going into possession of the premises, the defendant claimed to hold under Forsyth; subsequently to that time, and before the commencement of this action, he claimed to possess and own the premises in his own right. That on the 13th day of January, 1860, the said Robert A. Forsyth, assignee, &c., conveyed these premises to the plaintiff, at which time the defendant was in possession thereof, holding under said Sarah C. Signer. That this action was commenced on the 23d day of January, 1860, and that there is no proof of a demand on the defendant for the possession of said premises before the commencement of this action." From the foregoing facts the judge drew the conclusion of law that the plaintiff was "not entitled to recover the possession of the premises in question in this action, and

that the defendant is entitled to judgment for costs." The plaintiff duly excepted to the judge's findings of fact and conclusion of law, and judgment having been duly entered thereon, the plaintiff appealed to the general term.

*M. Schoonmaker*, for the plaintiff.

*T. R. Westbrook*, for the defendant.

*By the Court*, HOGEBOOM, J. I. The first and most important question in this case is, was James C. Forsyth the owner in fee of the premises in question, or had he only a mortgage interest therein; for if he had only the latter, he could not maintain the action of ejectment. "No action of ejectment shall be hereafter maintained by a mortgagee, or his assigns or representatives, for the recovery of the possession of the mortgaged premises." (2 *R. S.* 312.)

The premises were struck off to Forsyth at public sale on the 28th day of November, 1848, (although the affidavits of foreclosure were not filed till the 4th day of May, 1850.) *Prima facie* this would be sufficient to show the *legal* title in him. But on the 12th day of December, 1848 — a fortnight afterwards, and in all probability in execution of a cotemporaneous agreement made at the time of the purchase — he executed and delivered to Isaac L. Hasbrouck, the previous owner of the premises, a paper whose import it is important to ascertain. It gave, first, a list of certain notes and bonds and mortgages (amounting in the aggregate to $6724) as received by him from Hasbrouck, and declared that the said securities and their proceeds should remain as collateral security for advances which might be made or liabilities incurred on the purchase "of other certain property at High Falls, now advertised for sale under mortgage by J. H. & Reuben De Witt, *or which I have already incurred in the purchase of other property* (the premises in question) *lately sold under mortgage by the executors of Jonathan Hasbrouck, deceased.*

Sahler *v.* Signer.

Whenever such advances are repaid, or such liability extinguished, I am to account to the said Isaac L. Hasbrouck for above securities or their proceeds. Dated Dec. 12, 1848.

JAMES C. FORSYTH."

This imports that Forsyth had received of Hasbrouck certain choses in action to *secure* him for certain liabilities incurred on the purchase of the premises in question. How or for whom incurred ? Certainly not for himself, nor for a third party beside Hasbrouck; for in such case he would have no right, and no equity, to demand security therefor from Hasbrouck, but *for Hasbrouck himself*, as the equitable owner or party beneficially interested in the purchase. It seems to be, therefore, a written declaration in effect, that he made the purchase for the benefit of Hasbrouck; that he had advanced the purchase money or incurred liabilities therefor; and that he held the choses in action thus received from Hasbrouck as security for the liabilities thus incurred. Those liabilities have either been discharged by Hasbrouck or out of his choses in action; or they yet remain. If they have been discharged, then Hasbrouck has in effect paid the purchase money of this property, and was, at his death, the equitable owner, and his title passed on his death to his devisees, one of whom was the defendant; or it was subsequently transferred by the surrogate's sale to Sarah C. Signer, under whom the defendant claims. If those liabilities yet remain, then Forsyth's estate, or the plaintiff as his assignee, hold said choses in action, and the said real estate, as security for the moneys thus advanced or liabilities thus incurred. In either event the plaintiff ought not to recover. In the first alternative the plaintiff holds the mere naked title, while the defendant is invested with the beneficial ownership. In the last alternative the plaintiff holds the property as a mere security for his debt; and that is the very definition of a mortgage. " Every deed conveying real estate, which by any other instrument in writing shall appear to have been intended only as a security in the nature of a mortgage, though it

be an absolute conveyance in terms, shall be considered as a mortgage." (1 *R. S.* 736.)

If I am correct in the view thus far taken, it would seem to be decisive of the result; as the plaintiff must recover on the strength of his own title, and he fails to show a title authorizing him to recover; unless indeed the defendant is estopped from controverting the plaintiff's title, by taking possession under him or his assignor and becoming his tenant; which is the next question for us to consider.

II. I think the defendant was not in possession strictly as tenant of Forsyth, admitting in him a title in fee. 1. Forsyth claimed no such title himself. The paper or defeasance already referred to shows that such was not in fact his title. Hasbrouck continued in possession till his death in August, 1852. Forsyth admitted that he was to convey to Hasbrouck upon being paid his claim, and agreed to file a bill to close up the claim. He applied to Schoonmaker to institute proceedings for a *foreclosure* of the rights and claims of the heirs of Isaac L. Hasbrouck. 2. Sahler, the plaintiff, appears to have understood the matter in the same way. After Isaac L. Hasbrouck's death, Sahler, as his devisee of one half of his property, sold out his interest in these premises (as such devisee) to Nathaniel Brace, on the 12th of October, 1853. Sahler was also present at the sale had by order of the surrogate, of these premises, as the property of Isaac L. Hasbrouck, deceased; made no objection to the sale; and himself bid at the same time on other pieces of property of the deceased. 3. In the fall of 1852 (after I. L. Hasbrouck's death) the defendant went into possession, under an arrangement with Forsyth *to pay the taxes and keep up the farm.* It was to this defendant himself that "Forsyth said that Isaac L. Hasbrouck had a claim on this property, and that he was to deed to Hasbrouck when paid. Forsyth was to file a bill to close up this claim." The defendant was then devisee of one undivided half of these premises under Isaac L. Hasbrouck, deceased. The court below finds that it was

Sahler *v.* Signer.

agreed between Forsyth and the defendant that the latter should have possession of the premises; Forsyth proposing to commence proceedings for a strict foreclosure of the interest of the heirs at law and devisees of Isaac L. Hasbrouck therein; the defendant to have the management, use and profits of the premises, and to pay the taxes thereon and keep the fences in repair; that the defendant immediately thereafter (the agreement was in the fall of 1852) took possession of said premises under said agreement with Forsyth, and has ever since continued in possession.

These facts seem conclusive to show that Forsyth's interest in fact was not absolute, but only qualified—by way of mortgage or security; that it was so understood both by him and by the plaintiff and defendant; that the defendant did not take possession under Forsyth as his tenant, but took possession with the consent of Forsyth, as the known devisee of Isaac L. Hasbrouck; not to pay rent, but to keep possession, keep the fences in repair, pay the taxes and enjoy the rents and profits; not recognizing an absolute title in Forsyth, but only a title in him as mortgagee, which Forsyth was to foreclose with the view of perfecting (in some person) the legal title to the premises.

I do not think, upon this state of facts, that it can be said there was any estoppel upon the defendant from showing what was the real truth of the case. If there was not, then the facts thus proven show that the plaintiff was not entitled to recover.

In such case it becomes unnecessary to consider the other questions in the case, to wit: whether the deed from Robert A. Forsyth to the plaintiff was void by reason of adverse possession at the time; and whether the defendant was entitled to notice to quit.

I think the judgment of the circuit court should be *affirmed.*

[ALBANY GENERAL TERM, December 2, 1861. *Gould, Hogeboom* and *Peckham,* Justices.]