Sahler *v.* Signer.

* • •

SAHLER *vs* SIGNER and others.

On the 28th of November, 1848, F. became the purchaser of certain premises, at a mortgage sale. On the 12th of December, 1848, he executed and delivered to H., the previous owner of the premises, a paper by which he acknowledged the receipt of certain securities from H., and declared that such securities, and their proceeds, should remain as collateral security for advances which might be made, or liabilities incurred, by F. on the purchase of certain property of H. then advertised for sale, or which he had already incurred on the purchase of the premises in question; and that whenever such advances were repaid, or such liability extinguished, he (F.) was to account to H. for said securities, or their proceeds. *Held* that this paper was a *mortgage,* so far as the premises purchased were con-

Sahler *v.* Signer.

cerned, and that the legal relation between H. and F. was that of mortgagor and mortgagee.

And S. having, in August, 1852, after the death of H., purchased of F. his interest in the premises; *held* that he acquired only the same interest which F. had, to wit, a redeemable and not an absolute estate—the title of a mortgagee. And that having gone into possession, then or previously, under or with the consent of F., he was a mortgagee in possession.

*Held, also,* that a conveyance of the property, subsequently made by F. to R. F. in trust for his creditors, did not pass the same, the grantor's equitable interest therein having been already effectually conveyed to S.; that at all events it would be subject to the title of S. And that a conveyance from R. F. to the plaintiff was equally powerless, as against the title of S.

*Held, further,* that the plaintiff's title being derived through F. it was either wholly inoperative, or subordinate, and subject to the previous title which S. had obtained from the same source.

Where premises sold under a mortgage foreclosure were bid off by F. in effect for and as the agent of H. the mortgagor, the latter being the real purchaser, and the title vesting in and belonging to him, and F. having an equitable mortgage upon the premises, for his advances, but not the legal title or beneficial ownership; *Held* that H.'s estate in the premises was subject to sale under an order of the surrogate, made upon the application of creditors, and that the purchaser at such a sale became vested with such title as H. had in the premises.

If a mortgage is recorded as such, it will be notice to the world of its existence; and nothing less than actual fraud or artifice, in denying or concealing its existence, when inquired about or sought after, will estop the holder from setting it up afterwards.

An *estoppel* will not arise from the fact that the holder of a mortgage, though present at a sale of the mortgaged premises, made by order of the surrogate, and a party to the proceedings under which it was had, did not then disclose the existence of his mortgage; especially where the mortgagee was in open and notorious possession of the premises, at the time of such sale, and neither did nor said any thing actually tending to mislead the purchaser, as to the character of his title or possession.

Under such circumstances, the purchaser is bound to make active and particular inquiries, if he desires to be protected against the title of a party in actual and open possession.

Where one is mortgagee of the entire premises, and at the same time a devisee of only an undivided half thereof, the mortgage will not in equity be merged, but will be upheld for his protection.

An actual parol agreement for the sale of land, accompanied by the payment of a portion of the purchase money, and a transfer of possession, constitutes an equitable title—particularly if that title is a mortgage— which the law will recognize.

A mortgagee in possession can never be dispossessed, in an action of eject-

ment, by the holder of the legal title. Being in possession he is entitled to retain it, until his mortgage is satisfied out of the rents and profits, or otherwise.

So one who has purchased the mortgagor's title can not dispossess a person standing in the shoes of the mortgagee, until his mortgage is satisfied.

THIS is an appeal by the defendants from a judgment rendered in favor of the plaintiff in an action to recover the possession of real estate, with damages for the withholding thereof. The cause was tried at the Ulster circuit in January, 1865, and the premises were situated in that county. The judgment was for the plaintiff, to recover the possession of the premises with $150 damages, besides the costs of the action. All the material facts are stated in the findings of the judge who tried the cause, without a jury. These findings are as follows, to wit:

1. That one Isaac L. Hasbrouck being the owner and in possession of the premises in question in this action, executed thereon a mortgage to Jonathan Hasbrouck, bearing date February 28, 1839, which mortgage was duly foreclosed by advertisment, and on the 28th day of November, 1848, the premises were sold, and bid in by James C. Forsyth.

2. That on the 12th of December, 1848, said Forsyth executed to said Isaac L. Hasbrouck, an instrument in writing, of that date, of which the following is a copy, viz:

"I have this day received from Isaac L. Hasbrouck the following securities:

| | |
|---|---:|
| Nelson & Brown's note of 20th Nov., due 1st July, 1849 | $1,415 84 |
| Nelson & Brown's note of 20th Nov., due 1st March, 1849, | 1,006 06 |
| Nelson & Brown'e note of 20th Nov., due 1st April, 1849, | 1,012 05 |
| A. H. Denman & Co.'s note of 10th Dec., 3 months, | 613 81 |
| A. H. Denman & Co.'s note of 10th Dec., 6 months, | 624 56 |
| C. W. Broadhead's note, dated 20th Oct., at 6 days, | 50 00 |
| Jacob I. Signer's bond and mortgage of 27th May, 1846, 5 years, | 1,115 00 |
| Moses S. Mills' bond and mortgage for $500 partly paid and not assigned to me, but left for collection, as also two several mortgages—one made by Robert Shaw and one by John B. Shaw, the former for | 300 00 |
| and the latter for | 576 70 |

These securities are to be held by me, and collected at my discretion, or disposed of at not less than their face, and the notes of Nelson & Brown and A. H. Denman & Co. to be discounted at my like discretion. The proceeds of the said securities, and the securities themselves, unless disposed of or discounted as aforesaid, to remain as collateral security for any advances which I may be called upon to make, or any liabilities which I may be obliged to ·incur on the purchase of certain property at High Falls, now advertised for sale under mortgage by Jacob H. and Reuben Dewitt, or which I have already incurred on the purchase of other property lately sold under mortgage by the executors of Jonathan Hasbrouck, deceased. Whenever such advances are repaid or such liability extinguished, I am to account to the said Isaac L. Hasbrouck for the above securities or their proceeds.

Dated 12th December, 1848.

(Signed)        JAMES C. FORSYTH."

3. That the said instrument referred to, and embraced the premises in question.

4. That the said Isaac L. Hasbrouck left a will executed the 28th day of June, 1828, and died August 20, 1852, and at the time of his death was insolvent.

5. By his will he devised all his property, real and personal, to the plaintiff and defendant, share and share alike.

6. That subsequent to the purchase of the premises in question, by James C. Forsyth, and after the death of Hasbrouck, the defendant Signer occupied the said premises under an agreement with the said Forsyth, to pay the taxes and make repairs.

7. That subsequent to the last mentioned agreement, and in the month of August, 1852, the defendant Signer and James C. Forsyth made a parol agreement by which the defendant Signer purchased all of said Forsyth's interest in the premises, at the price and sum of $1000, and executed a promissory note to said Forsyth for $500, which Signer sub-

sequently paid, and the remaining $500 has not been paid, nor has said Forsyth executed to the defendant Signer any written conveyance or transfer of his interest in said premises. That the defendant Signer was immediately, on the day of the making of this agreement, put in possession of the whole of said premises by the said Forsyth, and from thenceforward to the time of the trial of this action continued such possession under such agreement.

8. That on the 24th of August, 1853, James C. Forsyth made a voluntary assignment of his property for the benefit of creditors, to his brother Robert A. Forsyth, and then immediately absconded, left the country and has never been heard from since.

9. That on the 12th of October, 1853, the plaintiff with his wife executed a deed to Nathaniel Bruce, of his interest in the premises devised to him by the will of Isaac L. Hasbrouck.

10. That on the 5th day of January, 1860, the plaintiff received from H. Broadhead, Jr. referee, a deed of the premises in question, which was purchased by the plaintiff at a surrogate's sale. That the said surrogate's sale was had upon the application of the creditors of Isaac L. Hasbrouck, under and in pursuance of title 4, chap. 6, part 2, R. S. 5th ed. And the proceedings had therein were for the sale of the real estate of which said Hasbrouck died seised, and not for the sale of any contract interest of said Hasbrouck in any real estate, as provided in section 78 of said title; nor were any of the provisions mentioned in sections 79, 80, 81 and 82 complied with on such sale.

11. That on the 13th day of January, 1860, Robert A. Forsyth executed to the plaintiff a deed of the premises in question, thereby conveying any interest which he possessed under the said assignment.

12. That at the time of the sale under the order of the surrogate, and at the time of the conveyance by Robert A.

Sahler v. Signer.

Forsyth to the plaintiff, the defendant was in the actual possession of the premises, claiming them as his own.

13. That the defendant Signer attended the sale of the premises under the order of the surrogate, and did not forbid the sale or notify the defendant that he had a claim to or upon the said premises, and that there was nothing said at the sale upon the subject.

14. That the defendant Signer was appointed administrator with the will annexed of the said Isaac L. Hasbrouck, on the —— day of ——— but that the petition for the sale of the real estate of Isaac L. Hasbrouck, and the proceedings had thereon, were not taken by the said Signer as administrator or otherwise, but were taken by the creditors of Isaac L. Hasbrouck under the statute mentioned in fact 10.

15. That it was not proven, and does not appear, that James C. Forsyth ever received any amount whatever upon the securities received by him of Isaac L. Hasbrouck, mentioned in the writing set forth in fact 2.

The conclusions of law were as follows:

1. That by the purchase of the premises at the foreclosure sale, and the execution of the instrument of the 12th December, 1848, the said James C. Forsyth acquired a lien upon the premises, in the nature of a mortgage, to the extent of the money paid by him therefor at the foreclosure sale.

2. That by the agreement of August, 1852, between the said defendant Signer and James C. Forsyth, and the payment of the $500, the said defendant Signer acquired all the interest of said James C. Forsyth in the premises.

3. That the deed executed by Robert A. Forsyth to the plaintiff, did not divest the defendant Signer of the rights or interest in the premises acquired by him under the agreement of August, 1852.

4. That the possession of the defendant was notice to the plaintiff, sufficient to put him on inquiry as to the rights of the defendant in or to the premises, so that the receiving and recording of the deed from Robert A. Forsyth to the plain-

tiff, did not postpone or affect the title or lien of the defendant Signer.

5. That by the conveyance from the plaintiff and wife to Nathaniel Bruce, the plaintiff divested himself of all interest in the premises as devisee under the will of said Isaac L. Hasbrouck.

6. That but for the estoppel hereinafter mentioned, the plaintiff did not by the surrogate's sale, or the deed from Robert A. Forsyth, acquire such a title to the premises as would enable the plaintiff to recover the possession of the premises in this action.

7. That in accordance with the law as settled upon the former trial of this action, the failure of the plaintiff to notify the defendant at the sale of the premises under the order of the surrogate, of his claim to, or interest in said premises, the defendant is estopped in this action from setting up such claim or interest, and that the plaintiff thereby became entitled to maintain this action and to recover possession of the premises, together with $150 per annum for the rents, issues and profits thereof; to which last finding, to wit, the 7th, the defendant duly excepted.

It was stipulated and agreed between the attorneys for the respective parties, that at the argument at the general term and elsewhere, the plaintiff should not be confined, in asking an affirmance of the judgment, to the reasons given by the court before whom the cause was tried, but that the plaintiff should be at liberty to present any reason arising from the undisputed evidence given, and the law applicable thereto, and that the court should be at liberty to refer to such evidence, and to pass upon such reasons, and to answer the same in deciding the law.

*J. Hardenburgh*, for the appellants.

*T. R. Westbrook*, for the respondent.

Sahler *v.* Signer

*By the Court,* HOGEBOOM, J. In a case between the same parties reported in 37 *Barb.* 329, the legal effect of the paper dated 12th December, 1848, was considered and determined. That decision, adopted after mature deliberation, we do not propose to re-examine, if we are at liberty to do so. The paper must be held to be a mortgage, so far as the premises purchased are concerned, and the legal relation between Isaac L. Hasbrouck and James C. Forsyth to be that of mortgagor and mortgagee. When, therefore, in August, 1852, after the death of Isaac L. Hasbrouck, Signer purchased of Forsyth his interest in the premises, he acquired only the same interest which Forsyth had, to wit, a redeemable and not an absolute estate — the title of a mortgagee. And having gone into possession, then or previously, under or with the consent of Forsyth, he was a mortgagee in possession.

He was also, at the same time, together with the plaintiff, a co-devisee of the premises under the will of Isaac L. Hasbrouck. But as he was a mortgagee of the entire premises and a devisee of only an undivided half, the mortgage would not in equity be merged, but upheld for his protection. There is nothing absolutely incompatible in the two relations. Forsyth, it is true, did not execute to Signer a deed or other written instrument conveying his title to the premises. But an actual parol agreement for the sale, accompanied with the payment of a portion of the purchase money, and a transfer of possession, constituted an equitable title — particularly if that title was a mortgage — which the law would recognize.

In August, 1853, Forsyth conveyed all his property to his brother, Robert A. Forsyth, in trust for his creditors; but if his equitable interest in *this* property had been already effectually transferred to the defendant Signer, the assignment could not pass this property, for there was nothing to convey; at all events it would be subject to the title of Signer. And when, in 1860, Robert A. Forsyth conveyed to the plaintiff, that conveyance was equally powerless as against the title of Signer.

So far therefore as the plaintiff's title is derived through Forsyth, it was either wholly inoperative or subordinate and subject to the previous title which Signer had obtained from the same source.

The plaintiff also makes title under the surrogate's proceedings for the sale of the real estate of Isaac L. Hasbrouck. And notwithstanding the argument of the defendant's counsel, I see no objection to a title thus derived. When Forsyth purchased under the Jonathan Hasbrouck mortgage, he purchased in effect for and as the agent of Isaac L. Hasbrouck. The latter was the real purchaser, and the title vested in and belonged to him. Forsyth had an equitable mortgage upon the premises, but not the legal title or beneficial ownership. For aught, therefore, that I can discover, Isaac L. Hasbrouck's estate in the premises was subject to sale under a surrogate's order, and the purchase in 1859 by the plaintiff vested in him such title as Isaac L. Hasbrouck had in the premises.

But aside from the question of estoppel, which will be presently considered, this does not entitle the plaintiff to recover. Signer is at this day a mortgagee in possession; and a mortgagee in possession can never be dispossessed in an action of ejectment by the holder of the legal title. Being in possession he is entitled to retain it, until his mortgage is satisfied out of the rents and profits or otherwise. The plaintiff and defendant, so far as I can see, stand in the same relation to each other as did Isaac L. Hasbrouck, and James C. Forsyth. And as Hasbrouck could not have ejected Forsyth until his advances were reimbursed, so also Sahler, who has purchased Hasbrouck's title, can not dispossess Signer, who stands in the shoes of Forsyth, until his mortgage is satisfied. That this mortgage is paid, there is no pretense, in the evidence in this case.

Such being the case, Signer has on the merits a valid defense to the action, unless he is deprived of it by the doctrine of estoppel. This estoppel is claimed to operate against

him, because though present at the surrogate's sale and a party to the proceedings under which the sale was had, he did not then disclose the existence of his mortgage; because he did not surrender the possession acquired under the will of Isaac L. Hasbrouck; because he succeeded in a former suit on the strength of the surrogate title; because he could not purchase Forsyth's interest for his individual benefit; and because, being administrator with the will annexed of Isaac L. Hasbrouck, he could not purchase otherwise than for the benefit of that estate.

The main ground of estoppel relied on, and that upon which the judge at the circuit appears to have placed his decision is the first—the non-disclosure of his mortgage at the surrogate's sale. If his mortgage was recorded as such (and there appears to be no evidence in this case whether it was or was not,) it would be notice to the world of its existence; and nothing less than actual fraud or artifice in denying or concealing its existence when inquired about or sought after, would estop the holder from setting it up afterwards. There was no moral or legal obligation requiring its production at the sale, although I admit any positive artifice actually misleading a *bona fide* purchaser to his prejudice would always furnish grounds for relief. But there is very little ground in this case to suppose that the plaintiff was in any wise misled, or indeed ignorant of the Forsyth claim. The statute (2 *R. S.* 105, § 32) provides that the surrogate's sale shall be subject to all charges by judgment or mortgage against the deceased. The deed which the plaintiff received on such sale contains a clause that the conveyance was made *subject to charges of that description*. There is nothing to show that the plaintiff made any inquiries of the defendant as to the character of his title or possession; or that the defendant did or said any thing actually tending to mislead the plaintiff in that respect. The defendant was in open and notorious possession of the premises, and this should have induced caution and inquiry on the part of the plaintiff to ascertain

its character and foundation. It is true Signer had, prior to the surrogate's sale, made various claims to this property, some of which may have come to the knowledge of the plaintiff. He claimed it as devisee of Isaac L. Hasbrouck — as having come into possession by arrangement with Forsyth; and also as having purchased the title and interest of the latter. This latter claim the plaintiff testifies he never heard of until after his purchase at the surrogate's sale. But I think the circumstances necessitated active and particular inquiries on his part, if he desired to be protected against the title of a party in actual and open possession. And there is much reason to suppose he must have known of Forsyth's equitable mortgage, as the very fact of a sale by the surrogate of Isaac L. Hasbrouck's interest in the premises is founded upon the idea that Forsyth's purchase under the Jonathan Hasbrouck mortgage was for Isaac L. Hasbrouck's benefit, and subject to redemption by him; otherwise Forsyth's title would have been absolute, and left no interest in Isaac L. Hasbrouck which would be the subject of sale.

I therefore think that upon the facts presented there was no estoppel on this ground.

Nor was there an estoppel which should preclude this defense by the fact that Signer was the devisee of Isaac L. Hasbrouck. It is not clear that he assumed possession in that character, and if he did, I perceive nothing in that fact incompatible with his purchase of Forsyth's interest, to strengthen his title or possession.

Nor is he estopped by the effect of the former suit between the same parties. That had reference to different premises, and in that case it distinctly appears that he relied as well on the Forsyth title as that derived under the surrogate's sale.

Nor is he estopped from setting up his present defense, even if his purchase of the Forsyth claim enured in part to

Sahler *v.* Signer.

the benefit of the plaintiff. That would not entitle the plaintiff to oust him by an action of ejectment.

Nor does the doctrine apply in this case that a trustee can not purchase for his individual benefit. When Signer purchased from Forsyth he had not become administrator of Hasbrouck's estate. In the finding of facts appended to the case the date of his appoinment as administrator is left blank, and I do not discover it in the evidence in the case. In the finding appended to the judgment record it is stated as being on the 28th of March, 1853, whereas the purchase from Forsyth was in August or October, 1852; it being stated as August in one finding and as October in the other. There was nothing, therefore, in Signer's position or relation to the Hasbrouck estate which forbade this purchase from Forsyth, and it is unaffected by his subsequent appointment as administrator with the will annexed.

It is suggested on the part of the plaintiff that inasmuch as by the stipulation of the parties the plaintiff is at liberty to present any reason for the affirmance of this judgment arising from undisputed evidence, the judge erred in his finding of fact that Signer made the parol purchase of the premises from Forsyth before referred to. But aside from the objection that this is a question not arising upon undisputed evidence, which is a conclusive reason why it should not be considered, I think there was sufficient evidence to uphold the judge's finding in this particular.

My conclusions therefore are, that independent of the question of estoppel, the defendant established a good defense to the plaintiff's action; and that there is nothing in the question of estoppel which precludes such defense.

This renders it unnecessary to consider the other questions in the case.

The judgment must be reversed, and a new trial granted, with costs to abide the event.

[ALBANY GENERAL TERM, December 4, 1865. *Hogeboom, Miller* and *Ingalls*, Justices.]