DAVIDSON, RESPONDENT, *v.* WAMPLER ET AL., APPELLANTS.

(No. 1,675.)

(Submitted October 14, 1903.   Decided November 4, 1903.)

*Guardian and Ward—Power of Guardian to Contract Debts for Ward—Mortgage of Ward's Real Estate—District Courts —Probate Jurisdiction—Void Judgments — Curative Statutes—Appeal—Transcript—Clerk's Certificate—Mortgages.*

1.   Under Code of Civil Procedure, Section 1739, requiring a certificate of the clerk attached to the transcript that the undertaking on appeal has been properly filed, a certificate of the clerk omitting the word "properly" and inserting the date of the filing of the undertaking is sufficient, it appearing the undertaking has been filed in time.
2.   Under the Territorial Organic Act (Act Cong. May 26, 1864, c. 95, 13 Stat. 85), providing that the powers of probate courts shall be limited by law, and the Probate Practice Act (Comp. St. 1887, div. 2), enacted pursuant to the authority conferred, and fixing the powers of probate courts, such courts possessed no powers other than those expressly conferred.

3.  Upon the adoption of the state constitution, the district courts,—when sitting in probate matters, acquired only such probate jurisdiction as was possessed by the territorial probate courts.
4.  A guardian has no power to contract debts binding upon his ward personally.
5.  District courts, sitting as probate courts, have no power to authorize a guardian to mortgage the land of his ward, to secure a debt contracted to perfect title thereto.
6.  Session Laws 1899, p. 145, authorizing the disregard of certain irregularities in sales by guardians, does not apply to a mortgage by a guardian of his ward's land given to secure debts contracted for the perfecting of the ward's title to the same.
7.  No act of the legislature can give life and force to a judgment void for want of jurisdiction at the time of its rendition.
8.  In Montana, a mortgage possesses none of the characteristics of a sale; it is a mere lien, fixed upon property by contract of the parties, to secure the payment of a particular obligation, or the performance of a particular act.

*Appeal from District Court, Beaverhead County; M. H. Parker, Judge.*

ACTION by Milton L. Davidson against Reese B. Wampler and others. From a judgment for plaintiff, and an order denying a motion for a new trial, defendants appeal. Reversed.

STATEMENT OF THE CASE.

Action by the plaintiff to foreclose a mortgage upon certain real estate situate in Beaverhead county. The court entered judgment in accordance with the prayer of the complaint. Defendants have appealed from the judgment and from an order denying a new trial.

The facts necessary to an understanding of the controversy are the following: Some time prior to March 20, 1886, John B. Wampler died intestate in Beaverhead county, leaving surviving him his widow, Minnie A. Wampler, and two minor children, May and Walter Wampler. On March 20, 1886, the said Minnie A. Wampler was, by the probate court of Beaverhead county, duly appointed guardian of the minor children, and, after qualifying, acted in that capacity until her death. At the time of his death, John B. Wampler was the owner of the equitable title to certain lands in Beaverhead county by virtue of desert land and pre-emption entries thereof under the laws of the United States. To secure the legal title thereto for the bene-

fit of the estate, it was necessary that final proof of a compliance with the law be made. In order for the guardian to be able to do this, it was necessary that she should make certain expenditures upon the lands in irrigating, cultivating and reclaiming them. She therefore arranged with the plaintiff for a loan of $1,200, to be repaid within thirty days, upon an express stipulation that, in case of default in payment, she would obtain an order from the probate court permitting her to mortgage the lands to secure the loan. If the mortgage should be authorized by the court, the loan was to be repaid in three years at 12 per centum per annum, it being the purpose of the guardian to secure in the meantime patents from the United States government. The patents were issued, but the loan was not repaid. Thereupon, in order to carry out her agreement, the guardian applied to the district court for authority to execute the mortgage. The court, after notice, granted the order on November 26, 1890, and the guardian was, by its terms, authorized "to execute in her representative capacity a mortgage" upon all the lands to which she had secured patent. She thereafter, on May 8, 1891, executed to the plaintiff her promissory note "to the use and benefit of May and Walter Wampler, minors," for the entire sum of $1,200, due in three years, at the agreed rate of interest, and to secure its payment executed a mortgage upon the interests of the minors only. It appears that the money thus secured was expended for the benefit of the estate generally, the guardian being entitled in her own right to a one-third interest therein under the laws of succession, and each of the minors to a like interest. After the death of Minnie A. Wampler, Reese B. Wampler was appointed guardian of the minors, and was acting as such at the commencement of this action. He appeared and made defense for the minors. The district court directed in its decree a sale of the entire tract of land, and authorized the docketing of a judgment against the minors personally for any deficiency found to exist after appropriating the proceeds of the sale to the payment of the debt and the expenses of foreclosure. Presumably the decree embraced all the land upon the theory that the minors became owners of the one-

third interest of their mother at her death under the law of succession, the complaint containing an allegation that such was the fact.

*Mr. Henry A. Melton,* and *Messrs. Pemberton & Maury,* for Appellants.

A mortgage is a sale upon condition. (*Battle* v. *Torrey,* 65 N. Y. 297; *Atkins* v. *Kinnan,* 20 Wend. 241; *Sharp* v. *Spier,* 4 Hill, 76.)

Every requisite of the statute having semblance of benefit to an infant, must be strictly complied with, or title will not pass, or be incumbered. (*Atkins* v. *Kinnan, supra; Sharp* v. *Spier, supra; Striker* v. *Kelly,* 2 Denio, 323; *Battle* v. *Torrey, supra; Stillwell* v. *Swartout,* 81 N. Y. 109; Ency. Pl. & Pr. Vol. 10, p. 739, and cases there cited.)

The respondent was charged with notice of all matters and defects appearing in the record of these proceedings to mortgage. (Kleber on Void Judicial Sales, Par. 464; *Roberts* v. *Hughes,* 81 Ill. 130, 25 Am. Rep. 270.)

A court, whether its jurisdiction be limited or general, has no power to order a ward's lands to be mortgaged, to pay what appears on the face of the petition to mortgage, to be not the debt of the ward, but the debt of the guardian. (*Warren* v. *Union Bank,* 157 N. Y. 259, 43 L. R. A. 256, and cases cited.)

Enough facts must be alleged to bring the case within the statute, or else the court will have no power to make the order of sale. (Kleber on Void Judicial Sales, Par. 230, and cases there cited; *Atkins* v. *Kinnan, supra.*)

A guardian has no power to make a contract binding upon a ward or his property, however proper and beneficial the contract may be. Contracts made by him impose a personal liability upon himself, and his protection from loss lies in his right to charge the expenditures, if proper, to the ward's estate, in his accounts. (*Andrews* v. *Blazzard,* 63 Pac. 888; Am. & Eng. Ency. of Law, 2d Ed. Vol. 15, p. 70, and cases there cited.)

No deficiency decree can be taken on a bond and mortgage given by a guardian. (*Wood* v. *Truax,* 39 Mich. 628.)

The legislature has no power to validate, by retroactive legislation, a judicial sale of real estate which was void for want of jurisdiction in the court to make it; at least not without a provision for compensating the owners of the property. (*Roche* v. *Waters,* 72 Md. 264, 7 L. R. A. 533; *In re Christiansen's Estate,* 41 L. R. A. 504; Freeman on Void Judicial Sales, Par. 58; Constitution of Montana, Art. V, Sec. 26; Art. III, Sec. 27.)

*Mr. John G. Willis,* for Respondent.

Cited: *Northwestern Loan Co.* v. *Smith,* 15 Mont. 101; *Jackson* v. *Talbot,* 21 Ch. Div. 786.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the court.

1. Suggestion was made at the hearing that this court has no jurisdiction of this appeal, because it does not appear from the certificate of the clerk attached to the transcript that the undertaking on appeal has been "properly" filed as required by Section 1739 of the Code of Civil Procedure, and a motion was made to dismiss the appeal on that ground. The word "properly" is omitted from the certificate, and in lieu thereof is inserted the date of the filing of the undertaking. The term, as used in the statute, has reference to the time of the filing of the undertaking; and if it appears by fair intendment from the wording of the certificate, or by a comparison of the date of its filing with that of the filing of the notice of appeal, that the undertaking has been filed in time, this is sufficient. In this case the notice was served and filed on April 12, 1901. The certificate states that the notice was filed on the same day. In other respects the certificate conforms to the requirements of the statute. The motion to dismiss must, therefore, be overruled.

2. Many questions are raised and discussed in the briefs of counsel upon the merits of this appeal. We shall notice but

one of them, as we deem it the fundamental question involved, and a correct solution of it conclusive against the decree of the district court.

Counsel for defendant challenge the validity of the note and mortgage on the ground that a probate court had no power to authorize the guardian to incumber the estate at all; hence, the note and mortgage executed under authority granted by the order are void, and furnish no foundation for the decree. At the time the order was made and the note and mortgage were executed, jurisdiction of all matters of probate and of the administration and control of estates of minors was vested in the district courts of the respective counties of the state, such jurisdiction having been transferred, under the Constitution, to these courts from the probate courts established under the Acts of Congress creating the territory. (U. S. Stat. Vol. 13, page 85; *Id.* Vol. 14, page 426; Constitution, Art. VIII, Sec. 11, and Schedule, Sec. 4.) It was provided in the former of these Acts that the powers of the probate courts should be limited by law. Under this charter, commonly known as the "Organic Act," the legislature of the territory was authorized to enact laws defining and limiting the powers of these courts, or granting them additional powers, so long as these laws did not conflict with the express provisions of the Organic Act itself and the Constitution and General Laws of the United States. (*Ferris* v. *Higley*, 87 U. S. 375 (20 Wall.), 22 L. Ed. 383.) In pursuance of the authority so conferred, the legislature of the territory enacted the Probate Practice Act, which was in force at the time the order in question was made. (Comp. St. 1887, Second Division.) These provisions of law were regarded by the supreme court of the territory as limitations upon the powers of probate courts, and that court declared the rule to be that probate courts were courts of special and limited jurisdiction, possessing no powers other than those expressly conferred by statute. In other words, the Acts of Congress and the Legislature in pursuance thereof were the only authority under which those courts could proceed, and, if the particular power sought to be

invoked was not therein granted, the court could not proceed. This is the effect of the decision in *Chadwick* v. *Chadwick,* 6 Mont. 566, 13 Pac. 385, and the rule thus established is recognized distinctly in the subsequent cases of *In re Higgins' Estate,* 15 Mont. 502, 39 Pac. 506, 28 L. R. A. 116, *State ex rel. Bartlett* v. *District Court,* 18 Mont. 481, 46 Pac. 259, and *State ex rel. Shields* v. *District Court,* 24 Mont. 1, 60 Pac. 489.    These latter cases also recognize the rule that when, under the Constitution, the jurisdiction of these courts was transferred to the district courts, it was not enlarged, but it was the same as theretofore, though exercised by courts of general jurisdiction.    If, therefore, there was no authority conferred by the statute to grant the order under which the note and mortgage were executed, they are void, and the decree cannot stand; for, independently of authority granted by a court of competent jurisdiction, a guardian has no power to incumber the estate of his ward, or to bind the ward personally upon any undertaking entered into in the ward's behalf.    (*Wood* v. *Truax,* 39 Mich. 629; *Trutch* v. *Bunnell,* 11 Ore. 58, 4 Pac. 588, 50 Am. Rep. 456; *Hunt* v. *Maldonado,* 89 Cal. 636, 27 Pac. 56; *Fish* v. *McCarthy,* 96 Cal. 484, 31 Pac. 529, 31 Am. St. Rep. 237; 15 Am. & Eng. Ency. Law, 2d Ed. 70.)

We must, therefore, look to the Probate Practice Act in force at the date of the order to determine what power the court had in the premises.    Under this Act the court had ample power to order a sale of the ward's estate upon application of the guardian, when the necessary jurisdictional facts were made to appear, for the purpose of raising funds to pay debts or to support and educate the ward.    (Comp. St. 1887, Second Division, Secs. 367, 369, 370, 376, *et seq.*)    But nowhere do we find any provision granting the power, either in terms or by implication, authorizing the incumbrance of the property or the incurring of debts for the benefit of the ward for any purpose.    It must follow, therefore, that the decree of the district court was wholly unauthorized.  ·

But counsel for respondent say that the statute conferred upon

the court power to authorize a sale; that a mortgage is only a conditional sale; and that, it appearing that the proceedings were regular, and manifestly to the benefit of the estate of the wards, it should be sustained. Counsel overlook the wide distinction which exists under our system between a sale and a mortgage. Under the statutes of the territory and of the state, a mortgage has never possessed any of the characteristics of a sale. It has always been considered a mere lien, fixed upon property by contract of the parties, to secure the payment of a particular obligation or the performance of a particular act. (Comp. St. 1887, First Division, Sec. 371; *Gallatin County* v. *Beattie,* 3 Mont. 173; *Fee* v. *Swingly,* 6 Mont. 596, 13 Pac. 375; *First Nat'l Bank* v. *Bell S. & C. Mining Co.,* 8 Mont. 32, 19 Pac. 403; *State ex rel. T. C. Savings Bank* v. *Gilliam,* 18 Mont. 94, 44 Pac. 394, 45 Pac. 661, 33 L. R. A. 556; *Bennett Brothers Co.* v. *Tam,* 24 Mont. 457, 62 Pac. 780; *Holland* v. *Board of Commissioners of Silver Bow County,* 15 Mont. 460, 39 Pac. 575, 27 L. R. A. 797; Civil Code, Sec. 3810.) Title does not pass under it. A sale passes title to the property. The power of the probate court to authorize the guardian to sell the property of his ward is virtually a power in the court to sell and pass title, while the power to fix a lien upon the property and authorize a sale of it by the sheriff through foreclosure proceedings in the district court would be a wholly different power. Furthermore, the latter power would also imply power to authorize the guardian to enter into contracts binding the ward personally, for a mortgage to secure a debt presupposes the existence of a debt. The guardian may not contract debts for his ward. Debts contracted by him in the course of his administration are binding upon him personally, and the only method by which he may be reimbursed is upon a proper showing to the court to be allowed credit for them in his accounts, to be paid as other debts due from the trust estate, by payment out of the funds of the estate in the hands of the guardian or by a sale of the property. (Comp. St. 1887, Second Division, Sec. 367.)

Counsel also cite the case of *Northwestern Guaranty Loan Co.* v. *Smith,* 15 Mont. 101, 38 Pac. 224, 48 Am. St. Rep. 662,

in support of the decree, and contend that this court has declared the mortgaging of a property by a guardian as equivalent to a sale, and that the power of the court to authorize the one, in the light of other provisions (Section 422) requiring the guardian to safely keep the property and deliver it to the ward upon the expiration of the trust, implies the power to authorize an incumbrance of it for this purpose. The facts of that case were peculiar. There the property was deeded to the ward after it had been incumbered. The mortgage was over due, and was about to be foreclosed. The probate court granted an order authorizing the guardian to obtain a renewal of the debt for a term of three years at a lower rate of interest, and to secure it by a mortgage. By this transaction no new debt or encumbrance was created. It was the exchanging of one creditor for another in an effort to preserve the estate. Under these circumstances this court was of the opinion that the general rule against the mortgaging of the ward's estate did not apply, and that the mortgage should be upheld. The decision is, no doubt, justified by the general principles of justice and equity under the circumstances of the case; but we do not think the principle underlying it should extend to cases not substantially identical, especially since the manifest policy of the statute is that, if there are debts properly chargeable against the estate, a portion of the property should be sold in order to raise funds to pay them, and not that the whole of it should be hypothecated, and thus put in peril of loss by foreclosure proceedings.

Counsel cite the Act of the legislative assembly of 1899 (Sess. Laws 1899, p. 145), and contend that, though the order of the district court authorizing the action of the guardian was void, yet under this provision the proceeding was cured, and that for this reason the decree should stand. The third section of this Act declares: "Sec. 3. All sales by executors and administrators of their decedent's real and personal property, and all sales by guardians of their wards' real and personal property in this state to purchasers for a valuable consideration, which has

been paid by such purchasers to such executors or administrators or guardians of [or] their successors in good faith, and such sales shall not have been set aside by the district or probate court, shall be sufficient to sustain an executor's or administrator's or guardian's deed or conveyance to such purchaser for such real or personal property; and in case such deed or conveyance shall not have been given shall entitle such purchaser to such deed or conveyance and the same shall be sufficient to convey to such purchaser all the title that such decedent or ward had in said real or personal property; and all irregularities in obtaining the order of the court for such sale, and all irregularities in making or conducting the same by such executor, administrator or guardian, shall be disregarded."

It is manifest that the contention of counsel has no merit for two reasons: The Act does not in terms cover such a transaction as the one under consideration. It refers to sales by guardians, and not to mortgages, nor sales effected through foreclosure proceedings. As we have already seen, the power to sell does not include the power to mortgage. Furthermore, these curative Acts cannot be held to apply to proceedings which were, under the law at the time at which they took place, wholly void. A judgment or decree which is void for want of jurisdiction at the time of its rendition is void for all time, and no Act of the legislature can give it life or force. It is, in effect, no judgment. No rights can be acquired under it. All acts performed under its authority and all claims founded upon it are void. A purchaser under it obtains no title, and in attempting to assert a claim under it finds himself without redress. (1 Freeman on Judgments, Secs. 117, 120; *In the Matter of Christiansen*, 17 Utah, 412, 53 Pac. 1003, 41 L. R. A. 504, 70 Am. St. Rep. 794; Freeman on Void Judicial Sales, Sec. 58.)

If the Act is to be construed as applicable to the order of the court in question, then it must be regarded as an attempt on the part of the legislature to give life to that which had no life, and by the exercise of judicial power to render a decree the effect

of which would be to·take the property of the minors and sub-ject it to the claims of another without due process of law.

The motion to dismiss the appeal is denied. The decree is reversed and the cause is remanded to the district court, with directions to dismiss the action and enter judgment for the de-fendants for their costs.

*Reversed and remanded.*