MONIDAH TRUST, Respondent, *v.* SHEEHAN, County Treasurer, et al., Appellants.

(No. 3,154.)

(Submitted April 13, 1912.  Decided April 20, 1912.)

[123 Pac. 692.]

*Taxation—Solvent Credits—Situs of Property—Presumptions—Foreign Corporations—Injunctions Pendente Lite—Discretion.*

Taxation—Credits—*Situs* of Property—Presumptions.
   1.   The presumption obtains that personal property, particularly that of an intangible character such as credits, has its *situs*, for purposes of taxation, only at the domicile of the owner.

Same—Foreign Corporations—*Situs* of Property—Presumptions—Insufficiency of Evidence.
   2.   *Held,* in an action to enjoin the collection of taxes, where a corporation having its domicile in another state had, through its branch office in this state, made loans on promissory notes secured by mortgages on real property in S. B. county, which notes and mortgages had, however, not been held or kept within this state during the year (or at all) for which the taxing officer assessed to the corporation solvent credits for the full value of the notes thus secured, that the presumption in favor of the *situs* of the property in the foreign state referred to in paragraph 1 above, had not been overcome, and that an injunction *pendente lite* was properly granted.

Same.
   3.   The mere fact that residents of Montana owned all but four of 10,000 shares of the capital stock of a foreign corporation was not of itself sufficient to justify the assessor to consider it a "tramp corporation,"—*i. e.,* one incorporated in another state without any intention of doing business within it but solely to operate in other states,—to be regarded, with reference to business transacted in Montana, as a resident thereof and as domiciled therein, for the purpose of taxation.

Injunctions *Pendente Lite*—Discretion—Review.
   4.   The granting of injunctions *pendente lite* being largely a matter of discretion in the trial court, the supreme court will not interfere therewith unless there is a manifest abuse of such discretion.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

Action by the Monidah Trust against Michael J. Sheehan, Treasurer of Silver Bow County, and another. From an order granting an injunction *pendente lite,* defendants appeal. Affirmed.

*Mr. Albert J. Galen,* Attorney General, *Messrs. Thomas J. Walker, Louis P. Donovan,* and *Frank C. Walker,* for Appellants, submitted a brief; *Mr. Donovan* and *Mr. Thomas J. Walker* argued the cause orally.

A state has power to tax a foreign corporation upon solvent credits owned by it and arising out of business done within the state. (*Liverpool, London & Globe Ins. Co.* v. *Board of Commissioners,* 221 U. S. 346, 55 L. Ed. 762, 31 Sup. Ct. Rep. 550; *Orient Ins. Co.* v. *Board of Assessors,* 221 U. S. 358, 55 L. Ed. 769, 31 Sup. Ct. Rep. 554.)

The sole question, then, that remains is this: Has the state of Montana exercised this power? We believe it has, and call the court's attention to section 7, Article XII, of the Constitution. Respondent is a corporation "doing business" in this state; the credit here is property owned or used by it and not by our Constitution exempted from taxation. We therefore submit that the power which the state unquestionably has under the Liverpool and London cases, above cited, has been exercised in this state. The respondent has transacted most important business and has filed its mortgages within this jurisdiction, has made its notes payable in this county, and it is most obvious that this county is its principal place of business. Beyond this, it will demand the protection of our courts in the event that the maker of the notes fails in the payment of interest and principal. Under the general theory of taxation, that taxes are imposed as compensation for something received by the taxpayer, the respondent is liable to taxation. (1 Cooley on Taxation, 3d ed., 2; *Armour Packing Co.* v. *City of Augusta,* 118 Ga. 552, 98 Am. St. Rep. 928, 45 S. E. 424; *Metropolitan Ins. Co.* v. *Board of Assessors,* 115 La. 698, 116 Am. St. Rep. 179, 9 L. R. A., n. s., 1240, 39 South. 846; *Travelers' Ins. Co.* v. *Board of Assessors,* 122 La. 129, 24 L. R. A., n. s., 388, 47 South. 439; *Commonwealth* v. *Dun,* 126 Ky. 108, 10 L. R. A., n. s., 920, 102 S. W. 859; *Standard M. Ins. Co.* v. *Board of Assessors,* 123 La. 717, 29 L. R. A. 59, 48 South. 483; *Adams Express Co.* v. *Ohio State Auditor,* 166 U. S. 185, 41 L. Ed.

965, 17 Sup. Ct. Rep. 604; *Bristol* v. *Washington County,* 177
U. S. 133, 44 L. Ed. 701, 20 Sup. Ct. Rep. 585; *Metropolitan
L. Ins. Co.* v. *New Orleans,* 205 U. S. 395, 51 L. Ed. 856, 27
Sup. Ct. Rep. 499.) The converse of the rule, to-wit, that
where the government is unable to give protection to the prop-
erty it has no jurisdiction to tax, has also been declared by
the courts. (37 Cyc. 807, and cases cited; *Fisher* v. *Rush
County,* 19 Kan. 414; *Wilcox* v. *Ellis,* 14 Kan. 588, 19 Am. Rep.
107; *Buck* v. *Beach,* 206 U. S. 392, 11 Ann. Cas. 732, 51 L. Ed.
1106, 27 Sup. Ct. Rep. 712.)

The physical removal of the notes from this state, not in
the ordinary course of business, but purely and solely to defeat
a tax which under the law he should have been obliged to pay,
had the notes been left where they naturally should have re-
mained, is a fraud upon the government and cannot be coun-
tenanced by a court of equity. Such a removal does not in
any manner affect the business *situs* of the notes which would
otherwise be in Silver Bow county, Montana. (*Bristol* v.
*Washington County,* 177 U. S. 133, 44 L. Ed. 701, 20 Sup. Ct.
Rep. 585; *Metropolitan L. Ins. Co.* v. *New Orleans,* 205 U. S.
395, 51 L. Ed. 856, 27 Sup. Ct. Rep. 499. See, also, *Armour
Packing Co.* v. *Clark,* 124 Ga. 369, 52 S. E. 145.)

*Mr. James E. Murray,* for Respondent, submitted a brief, and
argued the cause orally.

The mere declaration, by the Constitution, that the state has
general power to tax does not imply that it is to tax all kinds
of property regardless of jurisdiction or questions of *situs.* The
Constitution, section 7, Article XII, reads: "All corporations
in this state or doing business therein shall be subject to tax-
ation." As said by the supreme court of Kansas in considering
similar language: "The natural implication from the language
in fact employed would seem to be that, as to the *situs* of
credits for taxation, the rules generally recognized were in-
tended to be followed." (*Kingman County* v. *Leonard,* 57 Kan.
531, 57 Am. St. Rep. 347, 34 L. R. A. 810, 46 Pac. 960.) It is
apparent that in order to make this general power operate on

solvent credits held by nonresidents, special legislation is necessary, changing the *situs*, or to use the language of the *Liverpool Case* (221 U. S. 34), conferring the jurisdiction to tax such class of property. (See *Holland* v. *Commissioners*, 15 Mont. 460, 27 L. R. A. 797, 39 Pac. 575.)

In many states a special *situs* for property of the character here in question is created by statutory enactment. This is true in Louisiana, Michigan, Missouri, Oregon, New York, New Jersey, Colorado, California and perhaps other states. (See the *Liverpool Case*, 221 U. S. 346, 55 L. Ed. 762, 31 Sup. Ct. Rep. 550; *Metropolitan* v. *Orleans*, 115 La. 698, 116 Am. St. Rep. 179, 9 L. R. A., n. s., 1240, 39 South. 846; *Common Council* v. *Rentz*, 91 Mich. 78, 16 L. R. A. 59, 51 N. W. 787; *State* v. *Runyon*, 41 N. J. L. 98; *Savings & Loan Co.* v. *Multnomah*, 169 U. S. 431, 42 L. Ed. 803, 18 Sup. Ct. Rep. 392; 37 Cyc. 947.)

After a careful examination of the law, it will be found that there are but two correct rules of decision relating to the taxation of credits, the one holding that the *situs* of such credits is the residence of the owner, at which place they are legally taxable; the other is based upon statutes changing the general rule of *situs* and authorizing the taxation of such credits at the place of their origin or where they are payable. All cases, if there are any, that do not come under either of the foregoing classes and which undertake to decide that such credits may be taxable at the place of their origin when there has been no legislative enactment authorizing such a rule, are wrong on principle. (See *State* v. *Gaylord*, 73 Wis. 306, 41 N. W. 521.) Even in states where there is such a statute, the courts have held that the taxing officers "must make a case precisely within its limits if they would take it out of the general principle." (*Hathaway* v. *Choury*, 14 Colo. App. 478, 60 Pac. 574.)

If the stock in this corporation is owned by local residents, it is taxable here, and the state can obtain the same revenue by taxation of the stock in the hands of the local owners, as it may by arbitrarily disregarding the settled rule that a credit, held by a foreign corporation, is not taxable here. (*Bank of Commerce* v. *Tennessee*, 161 U. S. 134, 40 L. Ed. 645, 16 Sup.

Ct. Rep. 456; *Farrington* v. *Tennessee,* 95 U. S. 687, 691, 24 L. Ed. 558; *Sturges* v. *Carter,* 114 U. S. 521, 29 L. Ed. 240, 5 Sup. Ct. Rep. 1014.) In nearly every state, and by repeated decisions of the supreme court of the United States, it has been held that shares of stock in a foreign corporation owned by persons residing in a state may be lawfully taxed to them in such state, although the capital and property of such corporation is taxed in the state where the corporation is located, or in the foreign state where the property is situated. (*Bradley* v. *Bauder,* 36 Ohio St. 28, 38 Am. Rep. 547; *Greenleaf* v. *Board of Review,* 184 Ill. 226, 75 Am. St. Rep. 168, 56 N. E. 295; *Wright* v. *Louisville & Nashville R. Co.,* 195 U. S. 219, 49 L. Ed. 167, 25 Sup. Ct. Rep. 16; *San Francisco* v. *Flood,* 64 Cal. 504, 2 Pac. 264; *Mackay* v. *San Francisco,* 128 Cal. 678, 61 Pac. 382.)

Appellants cite some federal cases holding that a foreign corporation may be an ''inhabitant'' of a state other than the state of its origin. Such cases are not at all applicable. A corporation may be ''found'' doing business in Montana through its officers and agents and served with process here, notwithstanding that it is a legal resident or citizen of another state, and that is all that the cases cited by appellants decide. The legal residence of a corporation is in the state of its origin, ''but although it must live and have its being in that state only, yet it does not by any means follow that its existence there will not be recognized in other places; and its residence in one state creates no insuperable objection to its power of contracting in another. * * * Natural persons through the intervention of agents are continually making contracts in countries in which they do not reside; and where they are not personally present when the contract is made, and nobody has ever doubted the validity of these agreements.'' (*Bank of Augusta* v. *Earle,* 13 Pet. (U. S.) 519, 10 L. Ed. 274; *Insurance Co.* v. *Francis,* 11 Wall. (U. S.) 210, 20 L. Ed. 77; *Land Grant Ry. Co.* v. *Coffey Co.,* 6 Kan. 245; *Commonwealth* v. *Standard Oil Co.,* 101 Pa. 119–147; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 29 L. Ed. 158, 5 Sup. Ct. Rep. 826.)

It is immaterial whether the mortgages in this case were removed from the state or were actually within its boundaries at the time of the assessment. It is a rule generally recognized that "a mere physical presence in the state of notes and mortgages belonging to a nonresident does not give them a *situs* therein for the purpose of taxation, for until the *situs* of such property is changed by law, it is at the domicile of the owner and is not property 'within the state' for purposes of taxation." (*Commonwealth* v. *Northwestern Ins. Co.*, 32 Ky. Law Rep. 796, 107 S. W. 233; 37 Cyc. 801.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The Monidah Trust is a corporation organized under the laws of Delaware and transacting business in Montana, Idaho, Washington, California, and elsewhere. James A. Murray is president, and E. L. Chapman, secretary and treasurer. These two individuals, with James E. Murray and W. W. Knox, constitute the stockholders and directors. Of the 10,000 shares of the capital stock, James A. Murray owns 9,988, and each of the other stockholders owns four shares. The corporation was organized about 1904. James A. Murray, James E. Murray, and Chapman are residents of Montana, while Knox is a resident of Delaware. The company maintains offices in Delaware, Montana, and California. On July 29, 1908, the plaintiff loaned to the State Savings Bank Realty Company $300,000, and took therefor three promissory notes of $100,000 each, secured by mortgage. While it does not appear affirmatively that the property subject to the mortgages is located in Silver Bow county, apparently it is. The loan was made in Butte. In 1911 the assessor of Silver Bow county apparently took from the records of that county the list of the mortgages and assessed to the plaintiff company solvent credits for the full face value of the notes secured by the mortgages, and the tax for that year was levied upon the amount and returned to the county treasurer for collection. Plaintiff applied to the board of equalization for relief, but was refused. It then tendered to the county

treasurer the amount of taxes due upon its property in Silver Bow county, exclusive of the mortgages; but the tender was refused. The taxes became delinquent, and certain real estate belonging to the plaintiff in that county was advertised for sale to satisfy the county's claim. Upon a verified complaint setting forth the fact that the notes secured by the mortgages, and the mortgages, are owned by the plaintiff, which has its domicile in the state of Delaware, and that the notes and mortgages were never held or kept within the state of Montana during the year 1911, the district court issued an order to show cause and upon a hearing granted an injunction *pendente lite.* From that order the county and the county treasurer, who are made defendants, appealed.

Counsel for appellants contend that any foreign corporation doing business in this state is liable to taxation upon its solvent credits, so far as the same arise out of business transacted in this state. *"Mobilia personam sequuntur"* is a maxim of law as old as the law itself, and while it cannot be invoked merely to shield one from the payment of taxes, the presumption [1] nevertheless attaches that personal property, and particularly intangible personal property, such as credits, has its *situs,* for the purposes of taxation, only at the domicile of the owner. In *Holland* v. *Commissioners,* 15 Mont. 460, 27 L. R. A. 797, 39 Pac. 575, this court said: "But, as said before, the case at bar is not excepted from the general rule that 'securities, such as mortgages and the like, are deemed to have no *situs* except that of the domicile of the owner,' hence are not subject to taxation in this state if the domicile of the owner is without the state."

It may be conceded, for the purposes of this appeal, that it is within the power of this state to divorce property of this character from the person of its owner and give to it a *situs* of its own for the purposes of taxation; but the state has not undertaken to do so. The provision of section 7, Article XII, of our Constitution: "The power to tax corporations or corporate property shall never be relinquished or suspended, and all corporations in this state, or doing business therein, shall be subject

to taxation for state, county, school, municipal and other purposes, on real and personal property owned or used by them and not by this Constitution exempted from taxation''—does not do more than announce a general rule applicable to property which is ordinarily the subject of taxation; while section 11 of the same Article indicates clearly that the state was not attempting to do more. That section reads: ''Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.'' Section 2521, Revised Codes, provides: ''The property of every firm and corporation must be assessed in the county where the property is situate, and must be assessed in the name of the firm or corporation.''

In *Gallatin County* v. *Beattie*, 3 Mont. 173, this court had under consideration the same question now before us, in a somewhat different aspect. In that case the taxpayer was a resident of Lewis and Clark county and held mortgages upon real property situate in Gallatin county. The taxing authorities of Gallatin county sought to subject the credits to taxes in that county, and to this end made the assessment from the records there, just as the assessor of Silver Bow county undertook to do in this instance. But in that case this court held that the mortgages were mere chattels, subject to taxation in the county where actually found; that the records of mortgages were not the mortgages, but only copies, and since the mortgages themselves were not in Gallatin county, the assessment of them there was void.

Assuming that the domicile of this plaintiff is in the state [2] of Delaware, these credits presumptively have their *situs* in that state. There is not any evidence in the record that the mortgages were in this state at any time during the year 1911; while the testimony, though not very direct or certain, tends to show that they were not. The presumption is in favor of their *situs* in the state of Delaware, and this presumption was not overcome.

But it is insisted that the plaintiff is what is frequently termed
[3] a "tramp corporation"; that is, "a corporation which is
chartered in one state—usually by the citizens of another state
—without any intention of doing business in the former state,
but solely to operate in other states." (Thompson on Cor-
porations, sec. 6632.) And therefore, as respects business trans-
acted in Montana, it should be regarded as a resident of this
state and as domiciled here for the purposes of taxation. The
evidence, however, fails altogether to support this view. It does
not appear who organized the corporation or for what purposes
it was created. The mere fact that residents of this state now
own the controlling interest in the stock is not sufficient to im-
peach the good faith of the incorporators or to change the domi-
cile of the corporation to this state. Neither the by-laws of the
corporation nor the laws of Delaware were before the lower
court, and neither are they before us. The effort to give the
corporation a domicile in this state therefore fails, and it can-
not be said that the acts of the officers or directors were not
fully authorized.

The granting of injunctions *pendente lite* is so largely a
[4] matter of discretion that this court will not interfere un-
less there is a manifest abuse of that discretion. (*Consolidated
G. & S. Min. Co.* v. *Struthers,* 41 Mont. 551, 111 Pac. 150;
*Parrot S. & C. Co.* v. *Heinze,* 25 Mont. 139, 87 Am. St. Rep.
386, 64 Pac. 326, 53 L. R. A. 491; *Heinze* v. *Boston & Mont.
C. C. & S. Min. Co.,* 30 Mont. 484, 77 Pac. 421.)

No error appearing in the record, the order is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Smith concur.